(Decided 18th December, 1889.)

## Daniel V. Ahl *vs.* Quitman P. Ahl.

*Lost instrument—Evidence of its Loss—Relief in Equity against Judgment, upon Subsequently discovered Evidence.*

One of the parties to an agreement, the other party to which is dead, though incompetent to prove either the contents or the execution of the agreement, is competent, he having been the last custodian of the paper, to prove its loss, leaving its contents and execution to be proved by other evidence.

In the year 1873, A. and B. purchased from their brother C. a farm in Pennsylvania where all the parties resided, and A. executed and delivered to C. a judgment bond conditioned for the payment of the purchase money in instalments, the last of which fell due in 1878. No judgment was entered upon this bond at that time for the entire amount of the purchase money, as might have been done, but on the 22nd of April, 1877, judgment was entered in Maryland by D, to whom the bond had been assigned, for the whole amount of the instalments then due. In 1881 D. brought suit on the bond in Maryland to recover the last instalment due thereon. A.

---

Ahl *vs.* Ahl.

---

resisted this suit, claiming that in the year 1876 he and C. had each conveyed a farm to D. which by agreement in writing were agreed to be taken in full payment of the entire amount intended to be secured by the judgment bond. This agreement could not be found and A. proposed to prove its contents by extrinsic testimony. But before the trial his counsel were shown the judgment bond, which contained thereon an acknowledgment by A. that the bond was his act and deed, purporting to have been made before a notary on the 16th of April, 1877. Thereupon they declined to set up this defence, believing that in the face of this acknowledgment, made in 1877, no such agreement as A. relied on could have been made in 1876. There being no other sufficient defence judgment was entered against A. for the entire balance due under the bond. Subsequently A. discovered the agreement, and filed a bill to obtain relief against said judgments; and upon proof of the agreement, and that the date of the acknowledgment of the bond had been altered so skillfully as to deceive an ordinary observer, and that the true date was the 16th of April, 1876, it was HELD:

That A. was entitled to a decree ordering both judgments to be entered satisfied.

APPEAL from the Circuit Court for Washington County, in Equity.

This was a bill in equity filed by the appellant against the appellee to obtain relief against two judgments against him by the defendant. A *pro forma* decree was entered in favor of the defendant and the plaintiff appealed. The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ROBINSON, BRYAN, and McSHERRY, J.

*Alexander Neill,* and *Henry H. Keedy,* for the appellant.

Equity will relieve against a judgment at law on the ground of evidence discovered subsequent to the trial, where there is conscience, good faith and due diligence shown. *Winthrop vs. Lane,* 3 *Desaussure,* 310.

In *Vathir vs. Zane,* 6 *Grattan,* 246, cited in *Hilliard on Injunction,* (3 ed.), 206, it is said: "So it is ground for relief against a judgment on a note, that a written contract without which the maker could not make his defence at law, had been lost."

"The loss of a written instrument which would have operated as a defeasance of a bond was held to be sufficient ground to warrant an injunction against the judgment, though no defence was made at law." *Wilson, Adm'r vs. Davis,* 1 *A. K. Marshall,* (*Ky.*,) 219.

The law upon this subject is well settled. *Wagner vs. Shank and Wife, Adm'rs, et al.,* 59 *Md.,* 318; *Kerr on Injunction,* 22; *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 336; *Winthrop vs. Lane,* 3 *Desaussure,* 310; *Gott, et al. vs. Carr,* 6 *G. & J.,* 312; *Vathir vs. Zane,* 6 *Grattan,* 246.

*George W. Smith, Jr.,* for the appellee.

STONE, J., delivered the opinion of the Court.

Dr. John A. Ahl and his two brothers, Daniel V. Ahl and Peter A. Ahl, in the year 1873 were living in the town of Newville, Cumberland County, Pennsylvania. They were all large property owners, and gentlemen of character as well as means. John A. Ahl was married, and had at that time only one surviving child, Quitman P. Ahl. Daniel V. Ahl and Peter A. Ahl were unmarried. Dr. John A. Ahl was about sixty years of age, and his two brothers some eight or ten years younger. All these gentlemen were engaged in various business enterprises. Daniel V. and Peter A. Ahl were in partnership under the name and style of P. A. Ahl & Bro., and among other enterprises, were engaged in the iron business. Dr. John A. Ahl does not appear to have been a member of a firm, but his son Quitman P. Ahl seems to have attended to his business matters for him from about the year 1868. These three brothers were

next door neighbors, and were upon terms of the closest intimacy at that time. Their friendship seems to have continued unbroken up to near the time of the death of Dr. John A. Ahl, although they could not always agree as to their mutual accounts. The death of Dr. John A. Ahl occurred in 1882 or 1883, when he was about sixty-nine years of age. In addition to large property in Pennsylvania, Daniel V. Ahl owned the Antietam Iron Works in Washington County, Maryland.

Such being the state of affairs between these brothers in the year 1873, Dr. John A. Ahl sold to his two brothers Daniel V. and Peter A. a farm lying in Pennsylvania called the "Mateer Farm," for the sum of eighteen thousand five hundred dollars. This farm was to be paid for in instalments, the last of which fell due on 1st April, 1878. To secure the payment of the purchase money for this farm, Daniel V. Ahl gave his brother Dr. John A. Ahl what is called by the Pennsylvania practice "a judgment bond." It seems to be the practice in that State to insert in the bond an authority for any attorney to appear for the obligor and confess a judgment, whether all the instalments are due or not, with the proper stay of execution. The bond in this case gave authority to any attorney, either of Pennsylvania or elsewhere, to appear for the obligor, and confess judgment, with the proper stay. All that the obligee of a judgment bond has to do in that State is to get an attorney to appear for the obligor, and enter the judgment at any time the holder of the bond may desire. When Dr. John A. Ahl took this bond, drawn as it was, he could have had the judgment entered at any time, as both he and Daniel V. Ahl supposed, and we have no doubt that it was the intention of both parties that it should have been entered in Washington County, Maryland, so as to be a lien on the Antietam Iron Works, then the property of Daniel V. Ahl. But for some unexplained reason

there was no judgment entered upon this bond until the year 1877, and after the bond was assigned by Dr. Ahl to his son Quitman P. Ahl. In that year Quitman P. Ahl, as assignee of his father, recovered a judgment on the bond for all the instalments then due, amounting, with interest, to upwards of $19,000. This judgment left, however, one instalment on the bond still due, and not included in the judgment. The bond was signed by, and the judgment obtained against Daniel V. Ahl alone, although the "Mateer Farm," for the purchase money of which the bond was given, was sold to Daniel V. Ahl and Peter A. Ahl.

To recur to a time shortly antecedent to this judgment, it appears that in September, 1876, Peter A. Ahl conveyed by deed, to Quitman P. Ahl, a farm lying in Pennsylvania, called the "McCulloh farm," for the consideration, as expressed in the deed, of $8690.31, and that on the 15th of December, 1876, Daniel V. Ahl conveyed by deed to Quitman P. Ahl a farm, also lying in Pennsylvania, called the "Brown farm," for the consideration, as confessed in the deed, of $12,000. Both these deeds were absolute on their face, drawn with formality and precision, with a receipt for the purchase money endorsed upon each, and properly acknowledged and recorded.

Things remained in that condition until February, 1881, when Quitman P. Ahl, to whom his father, Dr. Ahl, had assigned this bond in March, 1877, brought suit in Washington County, Maryland, against Daniel V. Ahl for the last instalment due on the bond, and which was not included in the judgment he had already obtained in 1877. This last suit Daniel V. Ahl disputed and contested. He insisted that by a written agreement entered into between himself and his brother, Peter A. Ahl, with Dr. Ahl, the Brown and McCulloh farms were given, at the request of Dr. Ahl, to Quitman

---

Ahl *vs.* Ahl.

---

P. Ahl in full payment and satisfaction of said bond, and that the whole bond was paid and satisfied. Hence Hence this case. The whole dispute in the case before us is, whether this bond was fully paid by the sale of these two farms. The complainant insists that it was paid, and that he is entitled to have the judgment entered satisfied. The defendant denies this and claims both the farms, and the judgment. This is the controversy.

When Daniel V. Ahl was sued in February, 1881, for the last instalment due on the bond, he appeared and pleaded that the whole debt had been paid by the sale and conveyance of these two farms. But he appears to have offered no proof of the fact in the trial of that case, and, standing unexplained, that would look like a suspicious circumstance, and well calculated to throw a cloud ever the complainant's case. But the explanation given by the evidence in this record, is full and satisfactory, and, we regret to say, anything but creditable to the defendant in this suit, who was the plaintiff in that.

Daniel V. Ahl proves that at the time of the trial in Washington County, above referred to, he had lost or mislaid the written agreement entered into by himself and his brother Peter A. with Dr. Ahl relative to the sale of the Brown and McCulloh farms. He is and was a competent witness to prove that fact. While he was incompetent to prove either the contents or the execution of the agreement, the other party to it being dead, yet he, as the proper custodian of the paper, was competent to prove its loss, leaving its contents and execution to be proved by other evidence. This is from the necessity of the case. No evidence can be given of the contents of a paper until that paper is proven to be lost, and no one can prove that loss but the last custodian. He was then a competent witness to prove the loss of the paper. Whether he had legally sufficient secondary

evidence of the contents of the agreement or not, does not appear. But, whether he had or had not, he was prevented from going to trial on that issue by a very extraordinary circumstance, in order to explain which it will be necessary again to recur to some antecedent facts.

Before the first judgment was obtained on this bond, which was on the 22nd of April, 1877, Daniel V. Ahl went before a notary public in the State of Pennsylvania, and acknowledged the bond to be his act and deed. Why this was done does not very clearly appear; but the probability, indeed almost the certainty, is that as the bond was payable in instalments, and some of them long over due, and the bond of some years standing, it was done to show that the *whole* bond, and all the instalments, were still due, that is to negative the idea of any partial payments. This acknowledgment of Daniel V. Ahl *appears upon its face* to have been made on the 16th day of April, 1877.

Now, when the case in 1882 was approaching trial Daniel V. Ahl employed two prominent attorneys to try his case, one Mr. McComas, a resident of Hagerstown, and the other Judge Sadler, then a practising attorney in the State of Pennsylvania, and now a Judge. The latter seems to have been his principal attorney. Upon Judge Sadler, Daniel V. Ahl seems to have relied to try the real issue in the case; that is, was this bond paid in full by the deeds of September and December, 1876? It was to try this, the main and important issue, that brought Judge Sadler.

But when Judge Sadler reached Hagerstown, and for the first time saw the bond, he saw, or *thought he saw*, that the bond was acknowledged to be in full force and effect in 1877 by the acknowledgment before the notary. That as Daniel V. Ahl had told him the agreement to take the lands in payment, and the execution of the deeds took place in 1876, he told Daniel V. Ahl that in the

face of the acknowledgment before the notary in 1877, there could be no such agreement as he relied on made in 1876. Daniel V. Ahl insisted that there was, and some high words passed between them, and Judge Sadler threw up his suit and went home. Mr. McComas, for the same reason that controlled the action of Mr. Sadler, declined to try the case on the issue of satisfaction, but tried it upon a mere technical point which was decided against him, and Quitman P. Ahl obtained his judgment. Neither of Daniel V. Ahl's counsel was willing to try the question of payment or satisfaction, when their only chance of success depended upon a *lost agreement* which was contradicted by the terms (apparently) of both the deeds and the acknowledgment.

But Daniel V. Ahl, although defeated in that case, did not abandon his claim. After repeated searches for this lost agreement he sent for a former clerk of his, who was then in the service of the Government at Washington, to aid him. The clerk came and after several days search did find the agreement among the papers of Daniel V. Ahl. He also examined or had examined the acknowledgment more critically, and upon the application of the magnifying glass it is perfectly apparent that the *original date of the acknowledgment was the* 16*th of April,* 1876, *and that the figure* "6" *had been erased with great care and the figure* "7" *written in its place.* This alteration was made with such neatness and care that it would not be noticed by the ordinary observer, but can easily be detected by the application of the magnifying glass. Tested by this, the alteration of the date is apparent. Our inspection of the original paper satisfies us on that point, apart from the evidence of others who testify to it.

The alteration in this date having been made, the question naturally arises when was it made, and who made it? These questions we do not think it material

for us to decide. It is enough to know that the *altered date*, not then known to be altered, and the *want of the original agreement*, caused his counsel practically to abandon his case. D. V. Ahl was powerless for want of the proof which he afterwards obtained. Immediately after he found the agreement he applied to a Court of equity to have it enforced, and for relief against the judgment. This relief he is certainly entitled to have if his newly found evidence sustains his claim.

The agreement which the complainant produces is in these words:

"Articles of Agreement made and entered into by and between John A. Ahl, of the Borough of Newville, of the first part, and P. A. Ahl and Daniel V. Ahl, of the same place, of the other part. Whereas, the said John A. Ahl, by indenture bearing date the 31st day of March, 1873, did convey to the said P. A. Ahl and Daniel V. Ahl, a certain tract of land situated in the Township of Southampton, County of Cumberland and State of Pennsylvania, known as the 'Mateer Farm,' for the sum of eighteen thousand five hundred dollars, payment of said sum being secured to the said John A. Ahl by judgment on the 'Antietam Iron Works,' situate in the County of Washington, State of Maryland. And whereas, the said P. A. Ahl, on the 13th day of Sept., 1876, did convey to Q. P. Ahl a certain tract of land situate in the Township of Mifflin, County of Cumberland, known as the 'McCullough Farm,' for the sum of eight thousand, ninety dollars and thirty-one cents. And whereas, the said Daniel V. Ahl, on this, the 15th day of December, 1876, did convey to Q. P. Ahl a certain tract of land situate in the Township of Metal, County of Franklin and State of Pennsylvania, known as the 'Brown Farm,' for the sum of twelve thousand dollars,

"Now this agreement witnesseth, That the aforesaid conveyances made to the said Q. P. Ahl shall be con-

sidered to be held only in trust by him for the proper use of the said John A. Ahl, and the considerations therein mentioned to be applied to the full payment of said judgment or to be held as collateral security for the payment of the same.

"It is further agreed, That if the said judgment shall be paid out of the proceeds of the sale of the Antietam Iron Works on or before the 1st day of April, 1880, or at any time prior thereto, by the said P. A. Ahl and Daniel V. Ahl, with interest on the same from the date thereof, then the title and ownership of said real estate conveyed to Q. P. Ahl for the security of the said John A. Ahl as aforesaid, shall revert to the original owners, the said P. A. Ahl and Daniel V. Ahl, and said conveyances as aforementioned shall be considered to be to all other intents and purposes null and void.

"In testimony whereof, we have hereunto set our hands and seals, this 15th day of December, A. D., 1876.

JOHN A. AHL, [Seal.]
P. A. AHL, [Seal.]
DANIEL V. AHL, [Seal.]"

"Witnesses:
W. H. Miller,
H. Lloyd Irvine."

The construction of this agreement is plain enough. It means that the Brown and McCullough farms were conveyed to Quitman P. Ahl as full payment of the bond in controversy, unless Daniel V. Ahl could pay the whole bond by a sale of the iron works before 1st of April, 1880. The only right reserved to Daniel V. Ahl was payment of the whole bond before 1st of April, 1880. If he failed to do that, his right of redemption was gone, and the agreement was no longer of any value, except as Daniel V. Ahl's receipt against the bond, and for that purpose it was all important to him. We have used the

term bond instead of judgment which is mentioned in the agreement, to prevent confusion, as there are two judgments, and it is evident *that at that time* both parties supposed the whole bond merged in a judgment.

As soon as this agreement was produced Quitman P. Ahl declared it a *forgery.* Unless this paper is a forgery, the complainant is entitled to relief, and the whole case turns upon the fact whether this paper is or is not truly what it purports to be. From a careful review of the whole evidence, we have come to the conclusion that this paper is a genuine document. In the first place, the paper itself has all the appearance of an ancient document. There is nothing to excite suspicion in the appearance or wording of the paper. It looks like a paper that any lawyer might have written upon the spur of the moment, at the request of a client. It is a mere *quasi* mortgage. If a forgery, D. V. Ahl and Peter A. Ahl and Mr. Irvine are all implicated in it, as the two Ahls produce and rely on the paper, and Irvine is the witness.

William H. Miller, one of the witnesses to this agreement, is dead, but Mr. Irvine the other witness is living. He testifies most distinctly and emphatically to the signature of his co-witness Miller, and of Dr. Ahl. He details several conversations between Dr. Ahl and his brothers, P. A. and D. V. Ahl, about getting additional security for the "Mateer Farm," and finally culminating in the agreement. The whole matter was often talked over in his presence. Irvine is no connection of any of the parties, and although a clerk for P. A. Ahl at the time, has not been with them since 1877, and is now a government employé. Unless impeached, his testimony is absolutely conclusive of the case. The only attempt to impeach it is by the *opinion* of some witnesses that the signatures of Miller and Dr. Ahl to the agreement are not their genuine signatures. Most

of these testify in a doubting manner. It is well known that the general appearance of a writing is somewhat affected by the style of the pen used, and it was shown that Miller *generally* wrote with a fine pointed gold pen, and the general character of his writing was in consequence rather light or fine. The agreement was probably written with a blunt pen, and hence the failure to recognize his hand. More especially as other specimens of his writing were generally produced by Q. P. Ahl to his witnesses before getting their opinion as to the agreement. In one instance he seems to have been so doubtful of his witness that he got him to make an affidavit before he was regularly examined.

Mr. Irvine's testimony is supported by the positive testimony, as to the hand-writing of Miller, of many of his most intimate associates. These included lawyers who practised with him, and several who had been students in his office, and officers of banks where he had transacted business. The *weight* of the testimony based upon *mere opinion* is, we think, with the complainant.

But Irvine's testimony is supported by something more than mere opinion. Some five or six witnesses prove conversations with Dr. Ahl in which he substantially admitted that he had only a lien on these two farms to secure the indebtedness of D. V. and P. A. Ahl to him. One of these witnesses, a lawyer by the name of Williams, deposes that at the time of the execution of the deed for the Brown farm, the farm was leased to two men by the name of Trimmer; that the lease was assigned by P. A. Ahl and brother to Quitman P. Ahl "for the use of Dr. Ahl, statements and receipts thereof to be made by him annually, and to be accounted for at our final settlement." This assignment was endorsed on the lease, and it was left with him to be kept, as the attorney of the parties then present, to wit: Quitman P. Ahl, Dr. Ahl and P. A. Ahl, and he produced

Ahl *vs.* Ahl.

the assignment which had been in his possession since 1877.

We cannot review the testimony, which is very voluminous, at any greater length, as it would extend this opinion to an unwarrantable length.   In making up our judgment, we have excluded the evidence of D. V. Ahl and P. A. Ahl, the living parties to the contract, except, as we have before said, to prove the *loss* of the agreement.   We think the testimony excluding the testimony of D. V. and P. A. Ahl establishes beyond a reasonable doubt that the agreement marked exhibit H. Y. of complainant is a genuine document.

Having reached this conclusion, comment upon the mass of testimony relative to what is called in these proceedings "the accepted account" becomes unnecessary.   The "accepted account" is based upon a theory diametrically opposite to the existence of the agreement we have already said to have been clearly established.   Even if the agreement were thrown out of the question, the evidence brought forward to sustain this accepted account would *fail* to establish the fact that this accepted account was the consideration paid for the Brown and McCullough farms.

The *pro forma* decree of the Court will be reversed, and this case remanded, in order that a decree may be passed in conformity with this opinion, ordering both the judgments now standing in Washington County to be entered satisfied.

> *Decree reversed, with costs in this Court and in the Court below, and cause remanded.*

(Decided 18th December, 1889.)