Argued April 16; affirmed June 10, 1947

# DICKINSON *v.* FLETCHER
(182 P. (2d) 371)

*Frank H. Reeves,* of Portland, for appellant.

*William G. Dunlap,* of Portland, for respondent.

Before ROSSMAN, Chief Justice, and BAILEY, HAY and WINSLOW, Justices.

ROSSMAN, C. J.

This is an appeal by the defendant, Jack Fletcher, from a decree of the circuit court which enjoined him "from collecting any further sum from plaintiff on that certain judgment for the sum of $1,004.46 and

$49.10 costs, entered September 10, 1927, in this court in favor of the defendant and against the plaintiff and others,'' and which awarded the plaintiff, C. M. Dickinson, judgment against the defendant, Jack Fletcher, in the sums of $333.37 and $90.74, together with interest, costs and disbursements. The two amounts last mentioned represented collections which Fletcher had procured through the medium of writs of execution upon the judgment.

The appellant submits a single assignment of error which constitutes the following four contentions: (1) This suit is a collateral attack upon the aforementioned judgment; (2) since the judgment was for a specific sum of money, it could not be satisfied by the payment of a smaller sum; (3) the ''plaintiff has burden of proof''; and (4) costs were erroneously awarded to the plaintiff Dickinson.

Respondent Dickinson admits that the aforementioned judgment was entered against him in 1927, but claims that in 1928, pursuant to an agreement upon Fletcher's part to release him from liability upon the judgment, he and his wife signed a note in the denomination of $550, payable to Fletcher, and secured its payment with a chattel mortgage upon an automobile owned by Mrs. Dickinson. Fletcher concedes that in 1928 the Dickinsons executed a note in the amount of $550, that they secured its payment with a chattel mortgage upon an automobile, and that they timely paid the note, but denies that he agreed to satisfy the judgment record upon the payment of $550 or any sum less than the judgment amount. The issue before us is whether or not the circuit court was warranted in holding that the purported agreement to release Dickinson upon the payment of $550 was valid and proved.

September 10, 1927, the circuit court entered the aforementioned judgment. It made as judgment debtors this plaintiff-respondent, C. M. Dickinson, and four others. It was in favor of Jack Fletcher, the defendant-appellant, in the amount of $1,004.46, together with interest, costs and disbursements. April 13, 1945, virtually eighteen years after the entry of the judgment, the suit was filed which resulted in this appeal. The complaint in this suit was based upon two contentions, only one of which receives attention in the briefs; it is: (1) June 28, 1928, the sheriff of Multnomah County, on a writ of execution which was based upon the aforementioned judgment, took into his possession an automobile belonging to Dickinson's wife— a stranger to the judgment; (2) July 3, 1928, Dickinson, his wife and Fletcher compromised in the following manner the controversies resulting from the levy upon the automobile: Fletcher agreed, in consideration of an installment note signed by the Dickinsons in the sum of $550 and secured by a chattel mortgage upon the automobile, to satisfy the judgment so far as Dickinson was concerned; (3) the Dickinsons thereafter paid the installments until the note was fully satisfied; and (4) having fully paid the note, Dickinson, pursuant to the terms of the compromise agreement, became entitled to receive a release from the judgment. As we have said, Fletcher, the appellant, concedes that the automobile was seized by the sheriff under a writ of execution, that a note and mortgage were executed by the Dickinsons, and that the note was timely paid, but denies that he agreed to satisfy the judgment, so far as Dickinson was concerned, upon the payment of $550 or any sum less than the full amount that was due.

A copy of the note and the chattel mortgage are before us as exhibits. Both are signed by the Dickinsons. Forming a part of the chattel mortgage is an affidavit by Mrs. Dickinson in which she swore: "I am the sole and exclusive owner of the property described in this mortgage." In his action against Dickinson and the other defendants, Fletcher was represented by Mr. Robert R. Rankin, a member of the Portland bar. Mr. Rankin also represented Fletcher in procuring the writ of execution and in the transaction which resulted in the execution of the note and mortgage. In obtaining the release of the levy and in the transaction concerning the note and chattel mortgage, the Dickinsons were represented by Mr. T. Walter Gillard, likewise a Portland attorney. When Fletcher authorized Mr. Rankin to procure the writ of execution, he believed that the automobile belonged to Dickinson and so told Mr. Rankin.

Six witnesses testified at the trial, but, since eighteen years had passed since the note and mortgage were executed, their recollections were dim.

Mr. Gillard, who is now an assistant attorney general, was practicing law in Portland in 1928. As a witness for the plaintiff, he testified that prior to the sheriff's seizure of the aforementioned automobile he occasionally performed legal services for Dickinson, and that either the latter or his wife called upon him immediately following the seizure of the automobile. Mr. Gillard, who is a veteran of World War I, returned to the armed forces in 1940 and served until the end of hostilities. After his discharge he found that all of the records which he had accumulated in his law practice had been destroyed and, accordingly, had nothing to aid his memory in recalling the services he performed for the Dickinsons. He remembered clearly the auto-

mobile and the visit which the Dickinsons made to his office after the sheriff had seized it. Although he did not recollect details, he testified:

"As I say, I don't remember when or where I talked to Mr. and Mrs. Dickinson about it, but the matter was taken up with me by either Mr. or Mrs. Dickinson or both of them. I don't know who I talked to representing Mr. Fletcher, but I do remember rather generally, and I say it is a fact, that an arrangement was made by me on behalf of the Dickinsons for Mrs. Dickinson to give a mortgage on this automobile. Now I don't remember the amount or what the payments were, I don't remember that independently at all, but an arrangement was made whereby that was to completely release or discharge Mr. Dickinson's obligation under his judgment for which a levy had been made.

"Q. Do you believe you prepared this chattel mortgage?

"A. Well, I notice on this chattel mortgage that the mortgage is apparently signed by Georgia L. Dickinson, and the notary public was John A. Lee. Now at that time, under the date of the 3rd of July, 1928, Mr. Lee was practicing law in the same suite of offices with me. We were office associates; we were not partners. Mr. Lee did not handle any business for Mr. Dickinson. Whatever business we had in there before this was purely my own personal business that I handled, but Mr. Lee was kind enough— I don't know how it happened, but if Mrs. Dickinson came in to sign this mortgage and I would be out of the office he would take the acknowledgment and sign it, so that is possibly or probably the way this happened, but Mr. Lee himself would not have prepared this mortgage—I doubt it very much."

Dickinson swore that the automobile was not owned by him but by his wife, and that after its attachment he and Mrs. Dickinson secured Mr. Gillard's services. Upon cross-examination, he maintained that the two of

them signed the note and chattel mortgage in the denomination of $550 upon assurances that after they had paid that sum of money he would be released from liability upon the judgment. We quote from his testimony:

"We did this to get rid of something that was hanging over our heads, and we were assured by an attorney that by this method we would no longer be liable under our share of the judgment."

He also swore that before this advice was given, Mr. Gillard had conferred with Mr. Robert R. Rankin, the attorney who represented Mr. Fletcher in the action. Further testifying, he said:

"I think I went with Mr. Gillard to Mr. Rankin's office, but it isn't clear or my memory doesn't serve me right just what occurred, and I don't know as I was a part of the conference. I do know that Mr. Gillard assured both Mrs. Dickinson and myself after the conference that we were clean; that the matter was entirely settled at that time, and we have so considered it all these years."

He said that he fully paid the note and the required interest. He also swore that after his payment of the obligation he thought that he was fully discharged from the mortgage and gave the latter no more thought until 1945 when his salary was withheld from him by notices of garnishment.

Mrs. Dickinson, who is a teacher in a Portland high school, swore that she was the owner of the automobile and also of the home she and her husband occupied. Following the levy upon the automobile, according to Mrs. Dickinson, she and her husband called upon Mr. Gillard. Without objection, she testified as follows:

"Q. Why did you execute that note and chattel mortgage?

"A. To be rid of the annoyance of this sort of thing and settle the judgment.

"Q. Against your husband?

"A. Yes.

"Q. You understood it settled it in full?

"A. Yes, I did.

"Q. That was told you by your attorney?

"A. Yes, that was the purpose.

"Q. How is that?

"A. I say, that was the reason for doing it, and the purpose."

Mr. Rankin testified that he and two attorneys who were members of his staff represented Mr. Fletcher in the action that terminated in the entry of the aforementioned judgment. Later, when the judgment was not paid, Mr. Rankin obtained the writ of execution under the authority of which the sheriff, on June 28, 1928, seized the automobile. The latter was released, according to Mr. Rankin's records, five days later upon his instructions to the sheriff. When shown a copy of the chattel mortgage, he declared: "I regret to say that I am not familiar" with it, but added: "I have some records of it, Mr. Dunlap, but I am not particularly familiar with it." According to him, his records referred to a $550 note, a chattel mortgage and a release of the latter. They also showed that payments were made upon the note and that they were remitted to Mr. Fletcher. Mr. Rankin was certain that he did not write the note and mortgage, but his records indicated that he prepared the release May 28, 1929. Mr. Rankin could not recall the identity of the attorney who represented the Dickinsons at the time the automobile was seized, but, referring to that incident and the secured note, he said:

"It was given, as my records indicate—and I have no independent recollection now—it was given,

as my records indicate, in satisfaction of Mr. C. M. Dickinson's share of an obligation under a judgment that I secured in favor of Fletcher—.''

After maturity of the note Mr. Rankin's file, under his direction, was marked "Closed." As a matter of fact, no entry was made upon the judgment record of the aforementioned payment of $550, but Mr. Rankin explained that omission by saying that he never made such entries except upon request.

The only other witness whose testimony is material to the issue before us was Mr. Fletcher. Referring to the purported agreement which Dickinson claims was made concurrently with the execution of the note and mortgage, Mr. Fletcher swore: "There was no such agreement made." He testified that he never authorized an attorney to accept in satisfaction of the judgment any amount less than the full sum mentioned in the judgment. He conceded that Mr. Rankin remitted to him faithfully all sums paid by the Dickinsons upon the note and mortgage. We now quote from his testimony:

"Q. Can you explain why Mrs. Dickinson, who owed you nothing, would mortgage her car and sign a note with her husband to the extent of $550, when she was not liable to you?

"A. I have no explanation to make to it. That was her affair.

"Q. You haven't any explanation at all?

"A. None whatever.

"Q. It wasn't because of any agreement to release Mr. Dickinson?

"A. Positively not.

"Q. Have you any explanation to offer why, after this note for $550 was paid, your then attorney, Mr. Rankin, never attempted to collect anything further from Mr. Dickinson? Have you any explanation of that?

"A. Yes, I think I have. Mr. Rankin was a busy man, and he is not a collecting attorney, and it was a matter that I think he wanted to discard and be through with, otherwise I wouldn't have removed it from his office."

The findings of fact recite:

"Immediately after the seizure by the sheriff of plaintiff's wife's said Auburn sedan plaintiff and defendant Jack Fletcher entered into a new agreement whereby in consideration of plaintiff and plaintiff's wife executing a promissory note and chattel mortgage on said automobile in the sum of $550 payable to defendant, defendant Jack Fletcher agreed to fully satisfy said judgment as to the plaintiff and hold him harmless from any further liability thereon. That plaintiff and plaintiff's wife executed said note for $550, paid the same including interest thereon in an unknown amount, and thereafter plaintiff believed and was led by Jack Fletcher to believe that he had fully satisfied said judgment as to him * * * ."

■■ Although the evidence presented by the parties is not extensive, yet one could not expect the mind to retain impressions of the details of transactions which occurred virtually a score of years ago. Mr. Gillard, after procuring the release of the automobile, deemed that his services had ended and dismissed the item of business from his mind. Mr. Rankin, after the note was fully paid and he had remitted the payments to Mr. Fletcher, prepared a release of the mortgage, marked his file closed, and turned his attention to other matters. Mr. Gillard and Mr. Rankin are the principal sources available as to the facts of this controversy. Evidence is appraised, not by counting the number of witnesses nor by measuring the volume of utterances, but by determining quality. An event which transpired

years before a controversy arose can be proved to the satisfaction of disinterested minds even though all recollection of details has vanished from the memory, provided the essentials are recalled by witnesses whose intelligence and veracity command respect. Both Mr. Rankin and Mr. Gillard are trained in the law and each has had extensive experience. An agreement such as they described for the termination of the levy necessarily would linger longer in their minds than the commonplace phases of the transaction. Mr. Rankin knew that before he procured the writs of execution and attachment his client laid before him information showing that the car was owned by Dickinson. Mr. Gillard remembered that the attached automobile was not owned by the judgment debtor and related details concerning the car which lent assurance to his recollections. Both of these attorneys remembered that the purpose of the transaction which transpired immediately following the levy was not only to end the latter, but to release Mr. Dickinson from his liability upon the judgment. The purported agreement concerning the release was the material fact at the time of the trial, and, of course, it was also the material issue between the attorneys following the levy. Both of the attorneys were in a position to say that the note and mortgage were executed, not only to terminate the levy, but to release Mr. Dickinson from the judgment. Both Mr. Gillard and Mr. Rankin are men of good character, and we believe that each told the truth so far as he could recall the facts. Mr. Fletcher, it is true, denied that the purported agreement was made. He, however, had not participated in the conferences of the attorneys and was, of course, an interested party. Without questioning the good character of Mr. Fletcher, we

believe that Mr. Rankin and Mr. Gillard are reliable sources of the facts and that their testimony reflects the truth. We are satisfied that the quoted finding, with the exception of the last clause beginning with the words "and was led by Jack Fletcher", was warranted, and concur in it.

It follows from the conclusion just expressed that the only issue which remains is whether Mr. Fletcher was bound by the agreement into which he entered; that is, whether he was bound, upon payment to him of $550, to release Dickinson from a judgment which called for $1,004.46, costs, disbursements and interest, from September 10, 1927.

■ It is well settled that if a debt in a liquidated amount is payable in money at a prescribed time and place, the payment of a smaller sum by the debtor at the prescribed place and at the prescribed time, or after delinquency, will not support an agreement by the creditor to forego the residue. The payment of the smaller sum is not a benefit to the creditor nor a detriment to the debtor. Hence, the agreement to forgive the residue lacks consideration. In addition to his receipt of the less amount, the creditor must receive something else, or the debtor must incur a detriment, in order that the agreement to forego the balance will be supported by consideration: *Portland Mortgage Co. v. Horenstein*, 162 Or. 243, 91 P. (2d) 533.

In the present instance, Mrs. Dickinson, who was a stranger to the judgment, bound herself to discharge $550 of the judgment debt. Her agreement lacked consideration, unless it was accompanied with the required benefits and detriments. Obviously, the consideration for Mrs. Dickinson's signature to the note and her pledge of the automobile was the promise of

Mr. Fletcher to release Mr. Dickinson from liability upon the judgment after the $550 was paid. The consideration for Fletcher's promise to release Dickinson upon payment of a part only of the judgment debt was Mrs. Dickinson's promise to make the payment and to secure her promise by a mortgage upon her automobile. Up to the time when the transactions concerning the note and mortgage occurred, Fletcher, it is true, possessed a judgment for a sizeable sum against five individuals, but since they were insolvents, the judgment, like all similar moribund assets, was virtually valueless. It was only the levy of a writ of execution, through the receipt of mistaken information, upon the property of a stranger to the judgment which caused Fletcher to gain a promise possessing real value.

■ Williston on Contracts, Rev. Ed., § 121, says:

"So if the debtor gives any security to which the creditor was not otherwise entitled, whether the security is the property of a third person, or of the debtor himself, a promise in consideration thereof to release part of the debt is sufficiently supported."

From Restatement of the Law, Contracts, § 84, we quote:

"Consideration is not insufficient because of the fact

   \* \* \*

(c) that the party giving the consideration is then bound by a duty owed to the promisor or to the public, or by any duty imposed by the law of torts or crimes, to render some performance similar to that given or promised, if the act or forebearance given or promised as consideration differs in any way from what was previously due, or \* \* \* ."

Freeman on Judgments, 5th ed., § 1118, says:

"So if a judgment creditor accepts a sum of money and other property, real or personal, in full satisfaction of his judgment, he cannot avoid such satisfaction on the ground that the money and property do not together equal in value the amount of the judgment."

■ We believe that the principle stated in the three passages just quoted is applicable to the situation before us. That principle rendered Fletcher's promise to release Dickinson from the judgment valid. In the following instances, which are substantially similar to the one before us, the principle was applied to liability upon judgments: *Fowler v. Smith*, 153 Pa. 639, 25 Atl. 744; *Hendrick v. Thomas*, 106 Pa. 327; *Stoutenberg v. Huisman*, 93 Iowa 213, 61 N. W. 917; *Gillman v. Sorventino*, 101 N. J. Law 447, 130 Atl. 442, aff. 102 N. J. Law 715, 133 Atl. 919. In each instance the agreement was held valid, and the payment made pursuant to it sufficed to extinguish the judgment debt.

It follows from the foregoing that, in our opinion, the defendant-appellant, Fletcher, made the alleged agreement and that it was valid.

■ We now revert to the assigment of error. It will be recalled that only one was submitted and that it assumes the form of four contentions. We shall now dispose of them one by one. (1) We are satisfied that this suit is not a collateral attack upon the judgment which the circuit court entered in Fletcher's favor against Dickinson and four others. The complaint in this suit did not seek one iota of change in the judgment. (2) We believe that we have answered the second contention embraced within the assignment of error by showing that Mrs. Dickinson's signature to the note and to the chattel mortgage rendered valid Fletcher's

promise to accept $550 in discharge of Dickinson's obligation under the judgment. (3) We think that a preponderance of the evidence shows that the agreement alleged in the complaint was effected. (4) The fourth, being the last of the contentions, says: "Costs have been erroneously entered in the decree." We know of no basis for sustaining that contention. This disposes of the assignment of error. However, we notice in the appellant's brief the following:

"Relief from judgment that has been paid is by motion in the original action.

Herrick v. Wallace, 114 Ore. at Pg. 525

Laun v. Kipp, 155 Wis. 347, 145 N. W. 183, 5 A. L. R. 655.

"The defendant had adequate remedy at law. There was no occasion for a suit in equity.

Provost v. Millard, 3 Ore. 370

Herrick v. Wallace, 114 Ore. 520, 236 P. 471."

It will be observed that those contentions form no part of the assignment of error. We agree that normally a suit can not be maintained in equity to compel the entry of a satisfaction of a judgment. Generally, a judgment debtor who has satisfied the demands of the judgment has an adequate remedy in the form of a motion made in the court which rendered the judgment. In the present instance, the attacked decree does not order that the judgment rendered in 1927 be satisfied of record. The fact that the judgment is a joint and several one against five individuals and that its full amount has not been paid, possibly caused the court to refrain from directing the entry of satisfaction.

The prayer of the complaint follows:

"1. That plaintiff be granted a judgment as for fraud against the defendant, for the sum of $333.37 with interest at 6% per annum from January 24, 1945; the further sum of $90.74 with interest at 6%

per annum from May 31, 1945; both being sums levied against plaintiff in violation of defendant's agreement to satisfy the aforesaid judgment as to this plaintiff.

"2. That defendant be permanently enjoined from collecting any further sums from plaintiff on his original judgment, and that said judgment be fully satisfied as to this plaintiff.

"3. That plaintiff be awarded actual damages in the sum of $1,000.00 and exemplary damages in the amount of $2,000.00 against the defendant, and for such other and further relief as to the Court may seem meet and equitable."

Plainly, the purpose of this suit was to secure relief unobtainable in a court of law under a motion to compel satisfaction of the judgment. Equity will entertain a suit such as this when relief is sought which can not be granted in a court of law under a motion filed to compel satisfaction: *Chandler v. Faulkner,* 5 Ala. 567; *Ahl v. Ahl,* 71 Md. 555, 18 A. 959; *Allgeier v. Gordon & Co.,* 170 Misc. 607, 9 N. Y. S. 2d 848; and see note 7 Ann. Cas. 334. The decree attacked by this appeal did not order Fletcher to satisfy the judgment. In the first paragraph of this opinion we quoted the pertinent part of the decree. We believe that the attacked decree is not void for lack of jurisdiction on the part of the court. All contentions advanced by the appellant are dismissed as lacking in merit.

■ The plaintiff-respondent argues that damages should have been awarded to him on account of the two wrongful garnishments of his salary. Two reasons demand a rejection of this contention: the record contains no proof that the plaintiff-respondent was damaged by the garnishments, and he is neither an appellant nor a cross-appellant.

The decree of the circuit court is affirmed.