LIZZIE A. LEVY, Formerly LIZZIE A. DOCKENDORFF, Appellant, *v.* JOHN E. DOCKENDORFF, Respondent.

Second Department, February 16, 1917.

Husband and wife — divorce — enforcement in this State of foreign decree for payment of alimony — validity of agreement by wife releasing husband from liability under foreign decree — such agreement by minor son invalid — apportionment of alimony between wife and minor son.

A wife is entitled to maintain an action in this State for the enforcement of the payment of alimony under a foreign decree of divorce.

Unpaid alimony under a foreign decree of divorce is treated as a judicial debt for which the courts of this State will give a pecuniary judgment.

An agreement by a husband to pay a certain sum *in præsenti* to his wife in consideration of a release by her of his liability to pay alimony under a foreign decree of divorce does not "relieve the husband from his liability to support his wife," within the meaning of section 51 of the Domestic Relations Law, and will be upheld where the provision is adequate.

If, however, such provision is inadequate or has been accepted by the wife unadvisedly or imprudently, a court of equity has power to intervene.

A minor son cannot legally enter into a contract excusing a husband from paying alimony awarded under a foreign decree to the wife and son.

Where a wife has thus voluntarily released her personal rights under a foreign decree of divorce she is not entitled to demand its enforcement for her individual benefit.

Where a foreign decree of divorce awards alimony to be paid monthly for the support both of the plaintiff and her son, and the decree and record make no apportionment, that issue cannot be decided in an action by the wife in this State to enforce payment, but must be relegated to the foreign tribunal.

APPEAL by the plaintiff, Lizzie A. Levy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 28th day of January, 1916, dismissing the complaint upon the decision of the court after a trial at the Queens County Special Term.

*Isaac N. Jacobson,* for the appellant.

*Herbert R. Limburg* [*Henry L. Scheuerman* with him on the brief], for the respondent.

Judgment dismissing complaint upon the merits affirmed, with costs, upon the opinion of Mr. Justice CLARK at Special Term.

JENKS, P. J., THOMAS, MILLS, RICH and PUTNAM, JJ., concurred.

The following is the opinion of the court below:

CLARK, J.:

The plaintiff and the defendant were married in the city of New York in the year 1890, and the issue of the marriage is one son, born November 11, 1893, still living. Thereafter plaintiff brought suit for a divorce in the District Court of North Dakota, a court of general jurisdiction, including jurisdiction of the subject-matter of the suit, to which jurisdiction the defendant, by appearing generally in the suit, submitted. A decree duly followed, dated January 12, 1899, dissolving the marriage. That decree directs that the plaintiff recover from the defendant the sum of $85 per month alimony for the support of herself and child; that the plaintiff recover from the defendant the further sum of $1,500, payable at the rate of $15

per month, and further, that the plaintiff recover of the defendant the sum of $400, attorneys' fees and suit money in the action. On November 24, 1899, the parties entered into an agreement under seal by which, in consideration partly of the defendant relinquishing all right to the custody of the son, the plaintiff agreed to accept $500 in full of all alimony awarded to her under said decree, the defendant on his part agreeing to pay to the plaintiff, for the purpose of clothing and maintaining the son, $20 a month until the son became ten years of age, and thereafter $25 a month until he should become fourteen years of age, such monthly allowances to be used solely for the benefit and education of the son. January 27, 1900, the plaintiff, individually, in consideration of the sum of $500 to her paid by the defendant, executed and delivered to the defendant a general release, in the usual form, which, after reciting the payment of the $500, discharged him from all claims whatsoever, and more particularly "from any and all claims for alimony due or to become due to me under a certain judgment of divorce granted to me, from the obligations of which judgment as to alimony this is intended to be a release." More than eleven years having expired after the date of the North Dakota decree, the divorced parties entered into a second agreement under seal, dated February 11, 1911, which recites, among other things, that the plaintiff has been and is the guardian of the son, and at present is the owner of the North Dakota decree, and entitled to such sums as might be asserted against the defendant thereunder in any respect whatsoever. Upon the signing of this second agreement the defendant agreed to pay, and in fact paid, to the plaintiff $3,000 as follows: $1,040 to the plaintiff individually and $1,960 to her individually and as guardian of the son. By the same agreement the plaintiff undertook to pay for the education, maintenance and support of the son until he should attain his majority; bound herself that no further claim of any kind should be made on the defendant for the maintenance, support or education of the son; agreed to execute and deliver, individually and as guardian of the son, a release running to the defendant; ratified and confirmed the first agreement of November 24, 1899, and the general release of January 27, 1900; acknowledged entire and

complete satisfaction of all and every sum directed to be paid
by the North Dakota decree, and finally agreed, whenever
requested, to deliver such instrument as might be necessary to
have said decree marked satisfied. Simultaneously the plaintiff
delivered to the defendant a paper acknowledging payment of
the $400 included in the North Dakota decree. With the second
agreement a second general release in the usual form, also
dated February 11, 1911, was excuted by the plaintiff individu-
ally and as guardian of the son, and delivered to the defendant
as part of the transaction. In the year 1903 the plaintiff
married one Levy, by whom she has since been supported.
Neither the plaintiff nor her son has ever lacked maintenance
or support. By the year 1911 this defendant had remarried,
and his second wife, with her two children by the defendant,
is still living. In the complaint in this action, in which the
summons is dated May 14, 1914, the plaintiff sets up the North
Dakota decree and the two agreements and releases above
mentioned and demands judgment (1) that the North Dakota
decree may be made the judgment of this court; (2) that there
may be ascertained the sum due to her from the defendant for
her support pursuant to said decree and for the amount of the
judgment, with interest, contained therein; (3) that there may
be ascertained the sum due to her from the defendant for the
support and education of the son; (4) that the defendant may
be required to pay to her the sums so found to be due, and (5)
that the said agreements and releases may be set aside and
canceled and the defendant given credit for the payments made
thereunder upon account of the sums due to her pursuant to
the said decree. If, after the entry of the North Dakota decree,
nothing had been done by the parties in any way affecting or
tending to modify that decree, the plaintiff, in an action upon
the decree alone, might have been accorded a judgment for
arrears of alimony, the right to maintain such an action hav-
ing been sustained in the courts of this State. Unpaid alimony
is treated as a judicial debt, for which the courts of this State
will give a pecuniary judgment. (*Lynde* v. *Lynde*, 162 N. Y.
405; affd., 181 U. S. 183; *Moore* v. *Moore*, 208 N. Y. 97, 102;
*Williamson* v. *Williamson*, 169 App. Div. 597, 600.) The
plaintiff has, however, set up two agreements, made about

eleven years apart, and two general releases which accompanied the respective agreements. Each agreement undertook to modify the provisions of the foreign decree and to substitute in their place new engagements between the parties. Each agreement was supported by a valuable consideration and, upon its delivery, the plaintiff released the defendant from all obligations under the foreign decree and from all demands other than those which the defendant undertook under the modifying agreements. There having thus been substituted for the North Dakota decree new and different relations between the parties, the plaintiff cannot recover under the North Dakota decree as long as the agreements and releases which are the foundation of such new relations shall remain in force. This infirmity or limitation is clearly recognized by the plaintiff, for after setting up the agreements and releases, she asks to have them declared null and void. In approaching the question whether the agreements should be set aside it must be borne in mind that the North Dakota decree directed the sum of eighty-five dollars to be paid monthly to the plaintiff for the support of herself and son. Being a minor, the son could not legally enter into a contract which would excuse the defendant from performing that decree. The plaintiff, on the other hand, was at liberty to make individually such contracts with her husband as she might deem fit. Therefore, in passing upon the validity of the agreements, they must be considered in two lights, *first*, as agreements made by the plaintiff on her own behalf and, *secondly*, as agreements which the plaintiff undertook to make for the benefit of her son. It will be found by the court that the plaintiff could legally surrender her own individual rights under the foreign decree and could legally substitute therefor such other rights or claims as might satisfy her. She would now repudiate, it is true, her personal freedom so to contract on the ground that it is against public policy, citing cases which hold, in general terms, that a wife cannot release her husband from his obligation to support her, and asserting, further, that any such attempt on the part of a wife violates the prohibition of the Domestic Relations Law that husband and wife shall not contract " to relieve the husband from his liability to support his wife." (Dom. Rel. Law

[Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 51.) In *Winter* v. *Winter* (191 N. Y. 462), where, after a separation of several years, a husband and wife agreed to continue to live apart and the husband also agreed to pay a certain sum each week to the wife for her support, the point now raised by the plaintiff was carefully analyzed by VANN, J., his associates all concurring, as follows: "Does the contract in question 'relieve the husband from his liability to support his wife' in violation of the Domestic Relations Law ? An agreement by the husband to pay such a sum for the support of his wife as is satisfactory to her, cannot be said to have that effect. (*Reardon* v. *Woerner*, 111 App. Div. 259.) In *France* v. *France* [38 Misc. Rep. 459] it was stated that the contract does not alter or dissolve the marriage nor relieve the husband from his liability to support his wife, but rather insures the fulfillment of that liability; or, as it was put in *Effray* v. *Effray*,* it is 'in compliance with that duty and in furtherance of his obligations in that regard.' If it should turn out that the provision for the support of the wife was inadequate and that she accepted it unadvisedly and imprudently, a court of equity has power to set it aside upon restitution to the husband of so much of the consideration as the wife had not already expended for her own support. (*Hungerford* v. *Hungerford*, 161 N. Y. 550.) The clause in question was not intended to change, but to preserve the law as it previously existed and to prevent the broad powers committed to the wife by the forepart of the section to make any contract 'with any person, including her husband,' from opening the door so wide that she could release her husband from his liability without any adequate provision for her support being made by him. She does not relieve him of his obligation when she accepts his promise to perform it, and he does not forsake his duty when he agrees to discharge it to her satisfaction. She is the best judge of what she needs for her support, and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence." (See *France* v. *France*, 38 Misc. Rep. 459.) In *Effray* v. *Effray* (110 App. Div. 545) the husband entered

---

* 110 App. Div. 545.—[REP.

into a written contract with his wife to assign to her securities aggregating approximately $10,000 and to pay to her, in addition to the income arising therefrom, for the support of herself and children, such a sum as would make $1,000 per annum. The securities were assigned, but the defendant failed to pay the difference between the income and $1,000, and the action was brought in part to recover such difference. It will be observed that the contract involved the payment of a present sum as well as additional periodical payments; that it was upheld in its entirety, and that the wife had judgment in accordance with its terms. It may be urged by the plaintiff that the agreement of February 11, 1911, which provided for a single payment *in præsenti* of $3,000, without also providing for future periodical payments, is unsupported by precedent. Possibly this may be true since the *Winter* case approves continuing periodical payments alone and the *Effray* case goes no further than to approve a single present payment, accompanied by an agreement to make future periodical payments. There is furnished, however, in the *Winter* case a test which the courts of this State may safely apply where a payment *in præsenti* alone is involved, namely, whether such single payment is *adequate*. If *adequate*, the provision will stand; if inadequate, or if accepted by the wife unadvisedly or imprudently, then a court of equity has power to intervene. (*Hungerford* v. *Hungerford*, 161 N. Y. 550.) In the case at bar the record contains no evidence of inadequacy or of imprudence. Having voluntarily released her personal rights under the decree, the plaintiff has, therefore, no standing to demand its enforcement for her individual benefit in this action. It will be further held that the plaintiff can have no recovery for the son. Whether the releases and agreements bar his rights under the decree need not be decided here. If they are valid as to him, then they bar a recovery for him under the decree, leaving his rights to be asserted under the agreements alone. If, on the other hand, they are void as to him, the decree then becomes operative in his favor. What, in the latter event, may be lawfully claimed for him under the decree? At the most, some part of the alimony fixed by the decree. Yet the decree itself makes no apportionment; it merely informs this court that eighty-

five ·dollars alimony was to be paid monthly for the support both of the plaintiff and her son. It is not shown how or why that amount was fixed by the learned justice who granted the North Dakota decree. The record fails to disclose either the operation of his mind or the facts upon which his decision was reached. There exists, therefore, no basis upon which an apportionment may be made by this court. That issue must be relegated to the foreign tribunal in which the matter was originally presented and determined. If these views be correct this action fails not only with respect to the personal demands of the plaintiff, but also in so far as a recovery is sought for the benefit of the son. The defendant will have judgment dismissing the complaint upon the merits, with costs. Findings have been passed upon. Present decision and judgment on notice.