Argued July 10, affirmed August 1, 1974

RUBLE FOREST PRODUCTS, INC., *Appellant, v.*
LANCER MOBILE HOMES OF OREGON,
INC., *Respondent.*
524 P2d 1204

*Keith Rodman,* Eugene, argued the cause and filed briefs for appellant.

*Richard A. Roseta,* Eugene, argued the cause for respondent. On the brief were William G. Wheatley and Jaqua & Wheatley, Eugene, for respondent.

TONGUE, J.

This is an action to recover an unpaid balance of $2,500 allegedly due for the purchase of 11 truckloads of lumber by defendant from plaintiff.

Defendant alleged, as an affirmative defense, that some of the lumber was defective and that in compromise and settlement of a disputed claim plaintiff issued to defendant a credit of $2,500. Plaintiff, in reply, denied that the lumber was defective and alleged that defendant had given no proper notice of any claimed defects and that there was no bona fide dispute, but that the indebtedness was undisputed and liquidated; that there was no consideration for the credit; and that it was coerced and induced by defendant in bad faith.

■ The case was tried before the court sitting without a jury. Plaintiff appeals from a judgment for the defendant.① This being an action at law, we must affirm the findings and judgment of the trial court as in the case of a judgment based upon a jury verdict, if supported by any substantial evidence. *Kuzmanich v. United Fire and Casualty,* 242 Or 529, 531, 410 P2d 812 (1966).

The facts are not complicated. Plaintiff is a lumber broker in Eugene. Defendant is a mobile home manufacturer in The Dalles and purchased lumber from plaintiff from 1969 through September 1971.

Between August 10 and September 28, 1971, plaintiff sold and shipped 11 truckloads of lumber to defendant, for a total price of $31,091.24. In mid-October plaintiff's president, Mr. Ruble, telephoned defendant's manager, Mr. Scheneman, to complain of defendant's failure to pay for the lumber.

Mr. Scheneman stated that plaintiff had shipped

---

① Defendant also filed a counterclaim against plaintiff, which was also denied. No cross-appeal has been taken from the judgment denying that counterclaim.

defective lumber to defendant since 1969 amounting to "about $5,000" and that if defendant were to pay any part of the indebtedness there would have to be a compromise for the defective lumber.

Mr. Ruble testified that this was the first notice by defendant of any defective lumber, except for one complaint in 1970, which had been dropped. He also testified, however, that because Mr. Scheneman told him that no payment would be made unless an adjustment was agreed upon and because of financing problems with the bank, he informed Mr. Scheneman two or three days later that he would extend to defendant a "credit" of $2,500. Mr. Ruble then wrote a letter to defendant stating that:

"* * * In consideration for receiving $12,195.42 in partial payment of total outstanding to us of $31,091.24, we extend to you a credit of $2,500.00. Leaving a total owing to us of $16,395.82."[2]

A schedule for payment of the balance was then agreed upon, following which defendant made the scheduled payments, with a final payment on January 24, 1972.[3] On March 22, 1972, plaintiff filed this action for $2,500.

In support of its contention that the "credit" of $2,500 represented a bona fide compromise and settlement of a disputed claim, defendant offered testimony of an employee to the effect that he had told the truck driver who delivered one of the 11 shipments' that he would not accept delivery of that shipment

[2] In fact, the sum of $9,695.42 had been paid by defendant. That amount, when added to the credit of $2,500, totaled the $12,195.42 mentioned in that letter.

[3] That schedule and those checks totaled $18,895.82. That amount, when added to the previous payment of $9,695.42 and the $2,500 credit, totaled $31,091.24.

because the lumber was defective, but that after what he understood to have been a telephone call to plaintiff the truckload was accepted. That shipping order, dated August 10, 1973, was signed "acceptance subject to inspection."

This same employee testified to his recollection of the "percentage" of defective lumber of various specifications as included in the 11 shipments.

In rebuttal, both Mr. Ruble and his salesman responsible for this account denied any complaint by defendant about any of the lumber in any of the 11 shipments. Mr. Ruble also testified that some shipments were delivered by trucks not operated by plaintiff's employees, although trucks designated as Ruble #1, #2, #3 and #4 were leased trucks operated by plaintiff's own employees. It appears from the shipping order of August 10, 1971, that the "delivering carrier" was "Ruble #4."

Defendant's manager, Mr. Scheneman, did not testify.

*There was evidence to support a finding that there was a valid compromise of a disputed claim and one made in good faith.*

■ Plaintiff relies upon the rule that an agreement to take less than the whole amount of a liquidated claim is without consideration and unenforceable.[4] It is true that this is the rule at common law, as recognized in Oregon and in most jurisdictions, unless changed by statute. *Portland Mortgage Co. v. Horenstein,* 162 Or 243, 248, 91 P2d 533 (1939).

[4] Plaintiff cites Portland Mortgage Co. v. Horenstein, 162 Or 243, 91 P2d 533 (1939); Dickinson v. Fletcher, 181 Or 316, 182 P2d 371 (1947); and Restatement of Contracts § 417 (1932).

Even at common law, however, it is also the established rule, as stated in *Hodges Agency, Inc. v. Rees and Stover,* 202 Or 139, 158, 272 P2d 216 (1954), quoting from *Butson v. Misz,* 81 Or 607, 611, 160 P 530 (1916), that:

"'A compromise and settlement of a *bona fide* controversy between the parties, where each having equal knowledge or equal means of knowledge of the facts in good faith claims a right in himself against the other, and which claim the parties consider good or doubtful, constitutes a valid binding agreement, and is a sufficient consideration to support a new contract, even though the law and facts were such that a court would not have adjudged such an adjustment: [citing cases] * * *,'"

In addition, as contended by defendant, this sale of lumber was subject to the provisions of the Uniform Commercial Code, including the following provision, as stated in ORS 72.2090 (1) and (3):

"(1) An agreement modifying a contract within ORS 72.1010 to 72.7250 needs no consideration to be binding.

"* * * * *

"(3) The requirements of ORS 72.2010, relating to the statute of frauds must be satisfied if the contract as modified is within its provisions."

■ As pointed out by defendant, the letter by plaintiff's president confirming the allowance of a "credit" of $2,500 satisfied the requirements of ORS 72.2010 relating to the statute of frauds.

■ It is still required, however, that in order for an agreement modifying a contract to be valid, the agreement must have been made in good faith. Thus, as stated in Comment 2 to ORS 72.2090:

"* * * [M]odifications made thereunder must

meet the test of good faith imposed by the Uniform Commercial Code. The effective use of bad faith to escape performance on the original contract terms is barred, and the extortion of a 'modification' without legitimate commercial reason is ineffective as a violation of the duty of good faith. Nor can a mere technical consideration support a modification made in bad faith.

"The test of 'good faith' between merchants or as against merchants includes 'observance of reasonable commercial standards of fair dealing in the trade' (ORS 72.1030), and may in some situations require an objectively demonstrable reason for seeking a modification. * * *"[5]

---

[5] 1958 Official Text of the Uniform Commercial Code, reprinted in Oregon's Uniform Commercial Code, published by the Legislative Counsel Committee in 1962. This text formed the basis for House Bill 1020 (1961), enacted as Oregon Laws 1961, ch 726, effective September 1, 1963.

See also White and Summers, Uniform Commercial Code (Hornbook Series 1972) 39-40, § 1-5, stating the problem as follows:

"* * * While most modifications are legitimate, some are not. A party who asserts a modification may simply be a liar. And if in fact no modification or waiver ever occurred, then we may hope that the judge or jury will discover as much. The actuality of a modification or waiver may be conceded, but the aggrieved party may claim nonetheless that he was the victim of bad faith, open extortion, profiteering, chiseling, or the like, and that this conduct renders the modification or waiver invalid and of no legal force or effect. Section 2-209 [ORS 72.2090] is itself silent on policing problems, but the comments acknowledge them. And judges can use Code sections 1-203 [ORS 71.2030] and 2-302 [ORS 72.3020] on bad faith and unconscionability to police against the extortionist, the profiteer, the chiseler, the dishonest compromiser, and others who unjustly demand modifications or waivers.

"The extortionist is perhaps most familiar: 'Pay me more or I won't finish making the goods and you won't be able to open up your new business on the scheduled date.' The seller may thus get the buyer over a barrel and extort a higher price or some other concession. The wrong is aggravated if the extortionist insists on concessions that he sought but did not get

Plaintiff vigorously contends that "it [was] not in good faith for defendant to thus coerce plaintiff by withholding payment of any part of the debt" and that defendant "completely failed to carry its burden of proof as to a bona fide dispute and a bona fide compromise of that dispute."

■ Regardless of whether, upon reading the cold record, we might be inclined to believe the testimony offered by plaintiff rather than that of the defendant, we find that defendant offered evidence which the trial court was entitled to believe and which, if believed, was sufficient to support a finding by the trial court that defendant did not act in bad faith with an intent to coerce plaintiff, but acted in good faith, and that there was a bona fide controversy between these parties as a result of defendant's contention that these 11 shipments included defective lumber. In such a case the trial judge is in a better position than is this court to judge the credibility of the witnesses.[⊚]

■ Plaintiff also contends that defendant cannot complain of defective lumber because it did not notify plaintiff of any defects within a reasonable time, as required by ORS 72.6070, and is thus "barred from any remedy." However, validity of either a common law accord and satisfaction or the "modification" of a contract under the Uniform Commercial Code does not

---

in the negotiations leading up to the contract in the first place. Aggravated or not, extorted modifications or waivers are not enforceable under the Code. Courts can hold that they are in bad faith under 1-203 [ORS 71-2030] or unconscionable under 2-302 [ORS 72.3020] or both. * * *"

To the same effect, see 1 Anderson, Uniform Commercial Code 53, 354-55, §§ 1-107:4 and 2-309:6 (1970).

[⊚] See Sweet et al v. Stewart Livestock Co. et al, 231 Or 197, 200, 372 P2d 499 (1962).

depend upon the validity of the claim involved, except to the extent that the claim must be one which is made in good faith.

■ Plaintiff has also assigned as error the admission of statements made to and by the truck driver who delivered the shipment of August 10, 1972, as "inadmissible hearsay" on the ground that the driver was not shown to be an employee of plaintiff with authority to speak for plaintiff. Any such error does not require a reversal in this case, however, because the case was tried without a jury. The crucial issue to be decided was one of the good or bad faith of the defendant, not whether the truck driver was an agent of the plaintiff, and there is no indication that in making its decision the trial court relied upon such evidence. See *Lenahan v. Leach,* 245 Or 496, 500, 422 P2d 683 (1967).[7]

For these reasons, we affirm the judgment of the trial court.

---

[7] Plaintiff's remaining assignment of error was that the letter written by its president confirming allowance of a $2,500 "credit" was inadmissible in the absence of proof that there was consideration for such an allowance. For reasons previously stated, no consideration was required.