Argued February 28, affirmed June 6, reconsideration denied July 13, petition for review denied October 11, 1977

## MILLER, *Appellant,*
### *v.*
## MILLER, *Respondent.*
## (No. 67-397-E, CA 7302)

565 P2d 382

[ 723 ]

Richard J. Smith, Klamath Falls, argued the cause and filed the brief for appellant.

Robert F. Webber, Medford, argued the cause for respondent. On the brief was Pickens & Webber, Medford.

Before Schwab, Chief Judge, and Lee and Johnson, Judges.

LEE, J.

Johnson, J., specially concurring opinion.

**LEE, J.**

Wife appeals from an order modifying a decree of divorce entered January 16, 1968 which provided in pertinent part that a "Satisfaction of Judgment and Decree" executed by her on January 8, 1973 constituted a valid satisfaction "as to all sums due under the Decree * * *" as of that date.[1]

Under the terms of the original decree wife had been awarded both custody of the parties' three minor children and a monthly judgment against husband of $150, reflecting a support obligation of $50 per child. The evidence is persuasive that from the date of the decree husband's contributions toward the support of his children have been trivial at best; it is undisputed that he has made none of the child support payments required under the decree. In effect the children involved were supported solely by their mother and her second husband, whom she had married in March of 1968, throughout the five-year period between the entry of the decree and the execution of the disputed "satisfaction." That satisfaction, signed by wife, provided as follows:

> "KNOW ALL MEN BY THESE PRESENTS, That the undersigned, being the plaintiff in that certain divorce suit in the Circuit Court of the State of Oregon for the County of Josephine, entitled * * * Miller v. * * * Miller * * * wherein judgment and decree was entered in favor of the undersigned * * * does hereby certify and declare that said judgment and decree has now been fully paid and satisfied, and that this certification is made, executed, and delivered in order that the records in said County and State and otherwise may reflect such full payment and satisfaction."

More than three years after its execution wife filed her motion to set the satisfaction aside, contending (1)

---

[1] The modification order also provided (1) that the executed satisfaction had no "force and effect" as to child support accruing after the date of its execution, and (2) that the custody of one of the three minor children of the parties would be changed from the wife to the husband. Neither party has appealed from these additional provisions of the modification order.

that she had signed the instrument in reliance upon husband's intentional misrepresentations as to its effect, (2) that the satisfaction was unenforceable because she had received no consideration for its signing, and (3) that the instrument ought to be declared invalid as against public policy. Following a hearing on this motion the court entered the order from which wife has appealed.

■ Despite the fact that the disputed instrument is framed in what appear to be unambiguous terms, wife testified below that when she signed the document she was, as a result of misrepresentations on the part of husband, under the impression that it was to have the limited effect of removing a judgment lien from a specific piece of real property husband was then attempting to sell, and that in consenting to the execution of the instrument she had not intended to grant a "satisfaction" of any greater consequence. In contrast to the testimony offered by wife, husband testified unequivocally that prior to securing her signature he specifically explained that it would, if signed, serve to eliminate altogether the accrued child support judgment. Simply stated, under the circumstances of this case the factual question of whether the satisfaction was the product of a material false representation by husband boils down to one of credibility. In light of the ultimate decision of the court below it is apparent that it found husband to be the more credible; according that finding the "great weight"[2] to which it is entitled we are led to conclude that wife has failed to establish that the satisfaction was fraudulently obtained.

■■ In contending that the satisfaction ought to be set aside because it was granted without consideration and is therefore unenforceable, wife is apparently relying upon the general rule that an agreement to take less than the whole amount of a liquidated claim

---

[2] *McCoy and McCoy,* 28 Or App 919, 562 P2d 207 (1977); *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970).

is unenforceable unless as a result of that agreement an additional benefit of some kind accrues to the creditor or the debtor incurs some additional detriment.[3] It is, however, also generally agreed that a debt may be the subject of a gift to the debtor and that such a gift may be effectuated by the execution and delivery to the debtor of a release or satisfaction with the requisite donative intent.[4] Where, as in this case, an acknowledgment of satisfaction has been executed in accordance with statutory requirement—ORS 18.400(2)—that acknowledgment may be said to give rise to an inference that it was made with the requisite intent. Faced once again with what amounts to a factual determination based upon an evaluation of a witness' credibility, we are satisfied that the absence of consideration does not in this case render the formally executed satisfaction invalid.

██ ██  Finally, wife argues that the satisfaction she apparently voluntarily delivered to husband, unsupported as it was by any consideration, should be invalidated as a matter of public policy for the reason that while a child support judgment is technically awarded to the custodial parent it is created for the benefit and protection of the child or children involved and should not, therefore, be susceptible to elimination at the discretion of the custodial parent. Even assuming that a custodial parent receives child support payments as a trustee, the general rule is that when a trustee has discharged the liability of the trust out of her own funds, she is entitled to reimbursement out of the trust funds;[5] where, as here, a custodial parent has in effect discharged the liability of the trust—i.e., the accrued unpaid child support obligation—by actually supporting a child over a period in which a judgment has

---

[3] *Ruble For. Prod. v. Lancer Mob. Homes,* 269 Or 315, 524 P2d 1204 (1974); *Dickinson v. Fletcher,* 181 Or 316, 182 P2d 371 (1947); *Portland Mortgage Co. v. Horenstein,* 162 Or 243, 91 P2d 533 (1939).

[4] Annotation, 63 ALR2d 259 (1959).

[5] G. Bogert, The Law of Trusts and Trustees § 972 (2d ed 1962); Restatement (Second) Trusts § 244 (1959).

accrued, that judgment would, it appears, accrue not to the child but to the supporting parent.

■ Plaintiff in *Baker v. Baker,* 22 Or App 285, 538 P2d 1277 (1975), attempted to sue her father for support he had allegedly failed to pay during some 14 years of her minority; conceding that her mother had supported her throughout her minority, plaintiff contended that she had nonetheless been damaged by her father's failure to meet his parental obligation to the extent that her standard of living had been reduced. The dismissal of plaintiff's complaint was affirmed by this court which, in accordance with the generally accepted rule, held that where a child has in the past been supported by a single parent any right of action against the noncontributing parent lies not with the child but with the parent who has provided the support. It follows that no cognizable rights of the child are prejudiced when a parent who has individually supported a child in the past elects to release a noncontributing parent from any responsibility arising from a failure to meet his or her parental obligations over the preceding period. Limited in effect to the unpaid child support that had accrued to the date of its execution, the release granted by wife in this case was not, therefore, offensive to "public policy."

Affirmed. Costs to neither party.

**JOHNSON, J.,** specially concurring.

This is a case of first impression in Oregon concerning an important issue concerning the legal nature of child support to which the majority has given scant attention. The majority holds that the custodial parent may unilaterally in the absence of fraud release a past due child support obligation. The majority apparently treats a release or satisfaction of child support in the same manner as any other satisfaction of judgment which can only be rescinded if there is proof of fraud or duress. This is contrary to the trend of authority in

other jurisdictions which apply greater judicial scrutiny of such releases.

Some jurisdictions hold that private agreements releasing either past or future child support are per se invalid. *Hawkins v. Edge,* 218 Ga 463, 128 SE2d 493 (1962); *Varble v. Hughes,* 205 Ga 29, 52 SE2d 303 (1949); *McCormick v. Collard,* 105 Ind App 92, 10 NE2d 742 (1937); *Ruehle v. Ruehle,* 161 Neb 691, 74 NW2d 689 (1956); *Ditmar v. Ditmar,* 48 Wash 2d 373, 293 P2d 759 (1956); *Mosher v. Mosher,* 25 Wash 2d 778, 172 P2d 259 (1946). Most of these jurisdictions premise the rule on public policy grounds and that it is a breach of fiduciary duty by the custodial parent to make such release. Nebraska concludes that the rule is required as a matter of statutory construction. The Nebraska statute, like ORS 107.135, provides that the court may not modify any support payment that is in arrears. The Nebraska Supreme Court reasons that since the court may not modify, the parties are also powerless to do so. *Ruehle v. Ruehle,* supra; *see Poe v. Poe,* 246 Or 458, 425 P2d 767 (1967). The District of Columbia holds that any release for past child support is invalid unless there has been prior court approval to ensure the best interests of the child have not been jeopardized. *Pilson v. Salvoni,* 65 App D.C. 55, 79 F2d 411 (1935).

Other jurisdictions as a practical matter have invalidated most releases for past due support by imposing the traditional common law rule that the only consideration for a liquidated debt is something of equal value. *Andersen v. Andersen,* 89 Idaho 551, 407 P2d 304 (1965); *McCabe v. McCabe,* 83 Ohio L Abs 19, 167 NE2d 364 (1959).[1] Other jurisdictions have taken the view that courts will look to the nature of the release and will not hesitate to hold it void if the best interests of the child are jeopardized or the

---

[1] Oregon has generally adopted the restatement view that a promise to pay less than the amount of liquidated debt constitutes legal consideration. *Dickinson v. Fletcher,* 181 Or 316, 182 P2d 371 (1947).

agreement is otherwise contrary to public policy. For example, the Iowa Supreme Court held a release invalid where the non-custodial parent agreed to dismiss a change of custody proceeding alleging maltreatment by the custodial parent and forego future visitation in exchange for the release. *Anthony v. Anthony,* 204 NW2d 829 (Iowa 1973). *See also Hill v. Hill,* 106 Colo 492, 107 P2d 597 (1940); *Warrick v. Hender,* 198 So 2d 348 (Fla App 1967). The Iowa court also expressed concern that the effect of the agreement was to require the custodial parent to apply for public welfare assistance. *Anthony v. Anthony, supra.* A New York court has stated with respect to a release of past due alimony that it would strike the agreement down if the consideration was "inadequate, or if accepted by the wife unadvisedly or imprudently * * *." *Levy v. Dockendorff,* 177 App Div 249, 163 NYS 435, 438 (1917).

Other states hold releases are valid as to past due support but invalid as to future support. *Anderson v. Anderson,* 48 Ill App 2d 140, 198 NE2d 342 (1964); *Cervantes v. Cervantes,* 239 Mo App 932, 203 SW2d 143 (1947); *Potts v. Superior Court,* 229 Cal App 2d 692, 40 Cal Rptr 521 (1964); *Larsen v. Larsen,* 5 Utah 2d 224, 300 P2d 596 (1956). These decisions are premised on the concept that the custodial parent is a fiduciary. They reason that past due support is no longer part of the trust estate but rather is owed to the custodial parent as reimbursement for expenditures on behalf of the child. Utah, for example, requires that the court make a finding that the past due support would in fact be reimbursement to the custodial parent. *Larsen v. Larsen, supra.*

In spite of the case law from other jurisdictions, child support is purely statutory. Accordingly we must first look to the statutes to determine the rights and duties of the parties. The clear import of the Oregon statutory scheme is that the receipt of child support payments by a custodial parent is for the custodial parent's own account and not as a fiduciary. Accord-

ingly, the custodial parent should be free to deal with the support payments in any manner he or she desires. ORS 107.105 sets forth the court's powers in a dissolution of marriage proceeding. Subsection (1)(b) of that statute provides for child support as follows:

"For the recovery from the party not allowed the care and custody of such children, such amount of money, in gross or in instalments, or both, as may be just and proper for such party to contribute toward the support and welfare of such children. The court may at any time require an accounting from the custodian of the children with reference to the use of the money awarded."

The term "[f]or the recovery" does not indicate a legislative intent to impose a trust, but rather that the payment is an amount which the custodial parent may recover from the non-custodial parent to assist in providing for the care of the child. The custodial parent is under a legal duty to provide for the child's care, irrespective of whether there is any child support ordered or paid. It is true that under the second sentence, the custodial parent may be required to account to the court for how the funds are used, but this does not necessarily imply that the funds are fiduciary in nature. Rather this is part of the court's general supervisory authority to ensure that the custodial parent is properly caring for the child. Significantly, in addition to the power to award child support under subsection (1)(b) of ORS 107.105, the court has express power under subsection (1)(f) to establish a trust for the minor children.[2] Construing the two

---

[2] ORS 107.105(1)(b) and (f) provide:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"(b) For the recovery from the party not allowed the care and custody of such children, such amount of money, in gross or in instalments, or both, as may be just and proper for such party to contribute toward the support and welfare of such children. The court may at any time require an accounting from the custodian of the children with reference to the use of the money awarded.

subsections together the only rational conclusion is that an order for child support under subsection (1)(b) alone does not create a trust unless the court expressly imposes a trust pursuant to subsection (1)(f).

The purpose of child support is to assist in meeting the current expenses of child care and not to create an estate for the child. Courts do not have the power in a dissolution of marriage proceeding to require either party to create an estate or inheritance for the child.[3] The custodial parent's obligation for care and custody and the non-custodial parent's obligation to pay child support automatically terminate upon emancipation or age 21 if the child is attending school. To hold that a child has a beneficial interest in past due support would in effect establish an estate for the child. *See Baker v. Baker,* 22 Or App 285, 538 P2d 1277 (1975). Arguably by releasing the past due support, the custodial parent may have incurred debts which would endanger the child's future care and maintenance.

"(f) If there is a minor child of the marriage:

"(A) For the appointment of one or more trustees to hold, control and manage for the benefit of the children of the parties, of the marriage or otherwise, such of the real or personal property of either or both of the parties, as the court may order to be allocated or appropriated to their support and welfare; and to collect, receive, expend, manage or invest any sum of money decreed for the support and welfare of minor children of the parties.

"(B) For the appointment of one or more trustees to hold, manage and control such amount of money or such real or personal property of either or both of the parties, as may be set aside, allocated or appropriated for the support of a party.

"(C) The court shall direct the terms of the trust and make provision for the disposition or distribution of such money or property to or between the parties, their successors, heirs and assigns after the purpose of the trust has been accomplished. Upon petition of a party or a person having an interest in the trust showing a change of circumstances warranting a change in the terms of the trust, the court shall have the power to make and direct reasonable modifications in its terms."

[3]We have approved dissolution decrees which have directed that a party make the children beneficiaries of such things as life insurance policies. However, the premise for these provisions in dissolution decrees is not to create an estate for the child, but rather to ensure that there will be funds available for his current support.

However, rather than invalidating the release, the more appropriate device for solving this problem would be to modify the decree for future support. The custodial parent's debts or any other change in financial condition is a circumstance which the court can consider in entertaining a motion to modify.

Concluding that child support payments are not fiduciary in nature does not necessarily imply that every release by a custodial parent is valid. Although not at issue on appeal, I concur with the trial court that the release as to future support is invalid. The grounds for this result are not breach of fiduciary duty, but that such releases unduly interfere with the court's decree. The state has an interest in protecting the child's welfare which is established in the court's decree. The parties should not be able to undermine the state's interest by private agreements. An agreement between the parties providing for support, visitation and custody is not binding without court approval and incorporation in the decree. *Rorer v. Rorer,* 10 Or App 479, 500 P2d 734 (1972). Likewise, the parties must obtain prior approval of any modification in their support obligation.

For essentially the same reasons I believe courts should have the power to set aside some releases for past due child support on grounds other than fraud or duress. While I do not accept the reasoning adopted by courts from other jurisdictions, the factual issues presented in those cases illustrate the problem. Most of the reported cases deal with factual situations where the non-custodial parent has bargained away visitation rights, or consented to an adoption or foregone proceedings challenging the custodial parent's performance of custodial responsibilities in exchange for release of the support obligations. The non-custodial parent not only has a legal duty to make child support payments, but also has a continuing duty to perform his or her parenting responsibilities. I would hold that agreements bargaining away parenting responsibilities are declared void as a matter of public policy.

Finally, consideration should be given to liberalizing the rules concerning what is required to prove duress in ascertaining the validity of a release of a support obligation. A concurring opinion in *Ruehle v. Ruehle, supra,* 74 NW2d at 702, touches upon this problem. The opinion states:

> "These rules are good because they help to assure proper care of the children. They make it difficult for a father to escape supporting his children by the many artifices and pressures men use to get their divorced spouses to accept less than is needed for the maintenance of the children. For example: A man lets the payments become delinquent, he tells his former wife that he cannot pay, that he will quit his job, that he will lay in jail if necessary, that he will leave the state and pay nothing unless she will settle for less. The mother may be made to believe that she will be better off to take what he is willing to pay than to insist on getting what the children actually need and what he is actually able to pay."

In dealing with the problem, I would subscribe to the following comment from 1 Corbin, Contracts, § 128 (1952):

> "* * * The courts of common law did not create a rule against unconscionability and did not purport to refuse to sustain a common law action to enforce an unconscionable agreement. It is difficult to believe, however, that the judges of today, practically all of them 'chancellors' as well as 'judges', can fail to be influenced by equitable doctrines in the granting of any of the remedies that are available. There is sufficient flexibility in the concepts of fraud, duress, misrepresentation, and undue influence, not to mention differences in economic bargaining power, to enable the courts to avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors. * * *"

I concur with the majority opinion. There is no evidence in this case of duress, fraud or that the consideration involved either party in the forebearance of their parenting responsibilities.