Walter G. PHILLIPS,
*Appellant,*

*v.*

BISCHOFF & STROOBAND, P.C.;
Jerome F. Bischoff;
Michael Strooband and Roger Ousey,
*Respondents.*

(94-0136-L-3; CA A87701)

911 P2d 960

Joel B. Reeder argued the cause and filed the briefs for appellant.

David B. Paradis argued the cause for respondents. With him on the brief was Brophy, Mills, Schmor, Gerking & Brophy.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals a summary judgment dismissing his complaint for legal malpractice. ORCP 47. We reverse.

A court may grant summary judgment if the record demonstrates

"that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.[1]

According to the summary judgment record, plaintiff retained the services of defendants to represent him at a hearing in 1991 to establish plaintiff's arrearage for child support. The State of California had requested that the Jackson County Family Support Division and district attorney's office collect child support arrearages owed by plaintiff to his former wife. The summary judgment record indicates that the State of California determined that plaintiff owed a child support arrearage of $19,267 based on a 1970 California judgment. In addition to the arrearages, California also sought $19,582 in interest on that amount. Thus, the total amount that California claimed that plaintiff owed was $38,849.

Shortly before the hearing, defendants informed plaintiff that they would be unable to accompany him to the hearing. They suggested that he appear at the hearing and represent himself. Plaintiff followed defendants' advice. Plaintiff's affidavit in contravention of defendants' motion for summary judgment describes what happened at the hearing:

"I was advised by Defendants to merely go in and explain to [the trial judge] that I had paid all of the arrearage and that the documents would prove it. Because of my inability to

---

[1] In 1995 the legislature enacted Senate Bill 385, which amended ORCP 47 C. Or Laws 1995, ch 618, § 5. Because this case was pending at the time the act became effective, it is governed by the amended version. *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243 (1996).

represent myself, I finally agreed with * * * [the] Deputy District Attorney, to pay the sum of $19,267.00 at $200.00 per month. At that time [the Deputy District Attorney] advised me that this obligation would bear no interest and would clear up any and all arrearages in California and Oregon and no one would ever bother me again about back support. I later found out that California's total claim against me is approximately $38,000.00, which is being treated as a separate obligation to the one here in Oregon."

As a result of the agreement between plaintiff and the district attorney, the trial court entered an order:

"[T]he court hereby finds that respondent owes arrearage to [his former wife], petitioner herein in the amount of $19,267.00 as of July 1, 1991. *The interest requested [is] not ordered by the court.*" (Emphasis supplied.)

Plaintiff then commenced this action alleging that defendants were negligent in failing to represent him at the hearing and in sending him to court unrepresented. For purposes of the motion for summary judgment, defendants concede that they "breached a duty of due care owed to the plaintiff." Nevertheless, they argue that plaintiff did not suffer any damage as a result of their negligence and that, therefore, summary judgment is proper.

Plaintiff disagrees and points to his affidavit, in which he averred that he and his former wife had entered into an agreement whereby she agreed to accept cash and gifts paid directly to her or the children in settlement of the child support arrearage. Plaintiff's attorney also said in an affidavit submitted in the summary judgment proceeding that an expert witness would testify that, had defendants exercised reasonable care, plaintiff's support obligation would not have exceeded $3,000 and that the amounts that plaintiff now owes in Oregon and California were the result of defendants' negligence. Defendants do not dispute plaintiff's assertions about the settlement agreement, but argue that the law does not permit plaintiff to receive the credits he claims under any circumstances.

Plaintiff's memorandum to the trial court stated:[2]

---

[2] The record in this case does not contain a transcript of any oral argument about the summary judgment motion. Therefore, our determination as to what issues are preserved on appeal is confined to plaintiff's written memorandum in response to the motion.

"We earnestly believe and respectfully submit, that there are extraordinary equitable grounds existing to allow Plaintiff credits in this case. Plaintiff's former wife had effectively hidden herself and Plaintiff's children from him for a period of ten years. The Interlocutory Judgment required Plaintiff to pay support payments directly to his former wife. Upon finally locating her, and while a proceeding was pending in Jackson County, Oregon, she made an agreement to allow payments on the arrearage to be made in a certain manner. Plaintiff has discharged payment pursuant to the agreement made with his former wife, the obligee under the California Interlocutory Judgment. This is not an attempt to modify a decree to satisfy arrearage for partial or no payment, but to satisfy arrearage made pursuant to an agreement with the obligee."

On appeal, plaintiff argues that there are factual issues concerning the amount of support that he paid, thereby precluding summary judgment, and that

"the proceedings caused [him] to lose his claim of credits for payments made *and* still face the California claim that he owed an amount exceeding $38,000 there. Had defendants represented [him] as they agreed, plaintiff contends [that] he would have been able to show entitlement to the full extent of payments and credits he actually made." (Emphasis in original.)

■    Initially, we note that plaintiff did not tell the trial court that it should deny defendants' motion because there are factual issues about the amount of support that he paid. We decline to address any argument on appeal that was not preserved below. ORAP 5.45(2).

■    The elements of a legal malpractice action in which there is an attorney-client relationship are "(1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.*, a causal link between the breach of duty and the harm." *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (emphasis in original).

■    The "harm" in a legal malpractice case must be a collection of facts that the law is prepared to recognize as legally cognizable damage to the plaintiff. *Id.* at 228. Here, plaintiff's claim of harm generally is that, had defendants represented him at the hearing, he would have obtained a

better result than that arising from his agreement with the deputy district attorney. The 1991 hearing at which defendants were to provide plaintiff with legal representation was governed by the Revised Uniform Reciprocal Enforcement of Support Act (URESA), *former* ORS 110.005 *et seq.*[3] Under URESA, Oregon as the responding state was required to determine whether plaintiff owed a duty of support under Oregon law based on the 1970 California support judgment. *Former* ORS 110.071.

■ To the extent that plaintiff may be arguing that, under URESA, the Oregon court would have had the authority to order a satisfaction of the California judgment in California based on husband's performance of the agreement with his former wife, that argument is not well taken. Initiation of a proceeding under the Act in a responding state did not confer jurisdiction over any of the parties in any other proceeding. *Former* ORS 110.045.

■ Plaintiff acknowledges that, even if he had been represented by defendants, he could not have obtained any credits against an accrued child support judgment under Oregon law on equitable grounds or because of an estoppel. *Eagen and Eagen,* 292 Or 492, 640 P2d 1019 (1982); *Sheldon and Sheldon,* 82 Or App 621, 728 P2d 946 (1986), *rev den* 302 Or 615 (1987). Nonetheless, he says that an agreement between a judgment creditor and a judgment debtor to satisfy an accrued support obligation is specifically enforceable under Oregon law and that the case law holding that a court cannot unilaterally impose credits for equitable or estoppel reasons is inapposite when the issue is whether the obligation has been satisfied. His argument finds support in our holding in *Miller and Miller,* 29 Or App 723, 565 P2d 382, *rev den* 280 Or 1 (1977). In that case, the wife appealed after the trial court entered an order that provided that a satisfaction of judgment executed by her constituted a valid satisfaction as to all sums due under a support judgment. More than three years after the execution of the satisfaction, the wife moved to set it aside, contending in part that the instrument ought to be declared invalid because it was against public policy. We concluded that the satisfaction was not offensive

---

[3] URESA was repealed and replaced by the Uniform Interstate Family Support Act, effective July 1, 1994. *See* Or Laws 1993, ch 449.

to public policy because the accrued child support was owed to her and not to the dependent child. Therefore, a release of an obligation to pay accrued unpaid child support was not unlike the release of any obligation owed by a debtor to a creditor. We hold that under Oregon law, an accrued child support judgment can be satisfied by the performance of an agreement between the judgment creditor and the judgment debtor.

■ The question remains whether the law would have authorized the support enforcement court under URESA to decline to enter a support order in excess of $3,000, based on the agreement to satisfy the arrearage. In *State ex rel Juv. Court of Louisiana v. McIntyre*, 97 Or App 56, 775 P2d 56 (1989), we said, "URESA constitutes a procedural device to set the support obligation under Oregon law and is not merely a mechanism to enforce previous orders." *Id.* at 59. The significance of our statement in *McIntrye* to this case is that it expresses the concept of the separateness of a URESA proceeding in the responding state from other legal proceedings. Based on the same principle, we held that the trial court in *State v. Tennison*, 135 Or App 245, 898 P2d 807 (1995), had the authority under URESA to permit the mother to elect to provide health insurance for the parties' child even though the Nevada judgment on which the support petition was based ordered the father to provide insurance, because an Oregon statute permits an Oregon court to make such an order.

The language of URESA was consistent with this approach. *Former* ORS 110.201 authorized the court of the responding state to order the respondent to pay support if it found that a duty of support exists. *Former* ORS 110.022(3) defined "duty of support" to include arrearage of support past due and unpaid. It follows that if, under Oregon law, plaintiff's duty to pay support was only $3,000 because the balance of the arrearage had been satisfied, then the court was authorized by URESA to reduce the arrearage enforceable in Oregon to that amount. Plaintiff's argument that had he been represented by defendants in the court proceeding he could have obtained a better result than the agreement gave him is a cognizable legal argument. Whether it would have

been successful in the light of all the evidence is not before us in the summary judgment proceeding. On this narrow issue, we conclude that summary judgment is precluded because a trier of fact could conclude from the evidence that plaintiff was harmed by defendants' failure to represent him in the support enforcement hearing.

Reversed and remanded.