# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01914-SCT

*PATRICK ANTHONY THRIFT*

*v.*

*PAMELA KELLY THRIFT*

*AND MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/1998 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | T. SWAYZE ALFORD |
| ATTORNEYS FOR APPELLEES: | ROBERT H. BROOME |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ROBIN MINYARD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 05/18/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/8/2000 |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This appeal from the Chancery Court of Lafayette County, Mississippi, involves how Mississippi child support decrees are treated in foreign jurisdictions and the interpretation of the Mississippi Uniform Reciprocal Enforcement of Support Statutes ("URESA") and the Uniform Interstate Family Support Act ("UIFSA"), Miss. Code Ann. §§ 93-25-1 to 93-25-117 (Supp. 1999).

### STATEMENT OF THE CASE AND FACTS

¶2. On or about January 23, 1989, Pamela Kelly Thrift and Patrick Anthony Thrift were divorced pursuant to a decree entered by the Chancery Court of Lafayette County, Mississippi ["the chancery court"]. The decree awarded custody of the Thrifts' minor child to Pamela. Pamela had been awarded temporary child support during their separation, and Patrick was in arrears on this obligation. The divorce decree ordered

Patrick to pay the arrearage, attorney's fees, and $200 per month in child support.

¶3. Patrick subsequently moved to Wake County, North Carolina. In 1992 Pamela filed an action in the chancery court under URESA, and a "Certificate and Order" was filed with the North Carolina Division of Social Services, Child Support Enforcement Central Registry, ordering Patrick to send all child support payments to the Lafayette County Department of Human Services.

¶4. In 1992 and 1993, four separate orders were entered by the General Court of Justice, District Court Division of Wake County, North Carolina ["the North Carolina court"], establishing Patrick's arrearage and modifying (usually reducing) the amount of the monthly child support payment. In 1995 and 1997 the Mississippi Department of Human Services sent statements to Patrick which indicated that he owed $100 per month in child support. In September of 1997, the MDHS notified Patrick that he owed $200 in child support per month and $50 per month as payment toward the arrearage, and that the arrearage had been increased because he had been undercharged by $100 per month. Statements for October and November, 1997, reflect a payment due of $250.

¶5. Carolyn Dorris, the Child Support Supervisor for Calhoun and Yalobusha Counties,[1] testified at the hearing that, in December of 1997 or January of 1998, the MDHS recalculated the arrearage and added another amount (approximately $6,000) to the arrearage because the Mississippi Legislature had adopted the UIFSA.

¶6. On March 12, 1998, Patrick filed a motion for modification in the Lafayette County Chancery Court, citing the North Carolina court orders and stating that, according to the Wake County North Carolina Child Support Enforcement, as of May, 1997, Patrick's arrearage was $3,760.

¶7. Pamela filed a response to the motion for modification, admitting that the North Carolina court entered the various orders, but averring that: (1) the North Carolina court erred in its calculation of Patrick's arrearage; (2) the chancery court had jurisdiction over the parties and the subject matter; (3) the divorce decree had not been modified; and (4) as of January 8, 1998, Patrick was in arrears in the amount of $10, 495.36.

¶8. The chancery court found that: (1) the orders entered by the North Carolina court "were effective only within North Carolina and did not alter the original Mississippi Decree"; (2) the divorce decree had not been modified; (3) the child support obligation had accrued at the rate of $200 per month; and (4) after giving Patrick credit for payments made, as of June 30, 1998, he was in arrears in the amount of $10, 280.[2]

¶9. Patrick appeals from the chancery court's judgment, raising the following as assignments of error:

> **I. WHETHER THE ORDERS ENTERED BY THE COURTS IN NORTH CAROLINA MODIFIED THE CHILD SUPPORT PAYMENTS DUE BY THE APPELLANT THEREBY REDUCING THE ARREARAGE TO $4,733.88 AS OF NOVEMBER 1, 1997.**

> **II. WHETHER THE DEPARTMENT OF HUMAN SERVICES MAY RETROACTIVELY APPLY A CHANGE IN STATUTORY LAW AND INCREASE APPELLANT'S ARREARAGE IN THE AMOUNT OF APPROXIMATELY $6,000.00.**

## STANDARD OF REVIEW

¶10. "Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule." ***Magee v. Magee***, 661 So. 2d 1117, 1122 (Miss. 1995). An appellate court may reverse a chancellor's finding of fact only when there is no "substantial, credible evidence" justifying his finding. ***Williams v. Rembert***, 654 So. 2d 26, 28 (Miss. 1995) (quoting ***Snow Lake Shores Property Owners Corp. v. Smith***, 610 So. 2d 357, 360 (Miss. 1992)). "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." ***Johnson v. Johnson***, 650 So. 2d 1281, 1285 (Miss. 1994) (citing ***McEwen v. McEwen***, 631 So. 2d 821, 823 (Miss. 1994)).

## DISCUSSION

### I. WHETHER THE ORDERS ENTERED BY THE COURTS IN NORTH CAROLINA MODIFIED THE CHILD SUPPORT PAYMENTS DUE BY THE APPELLANT THEREBY REDUCING THE ARREARAGE TO $4,733.88 AS OF NOVEMBER 1, 1997.

¶11. In 1997, the Mississippi Legislature adopted the UIFSA and repealed URESA. This Court has held:

> This Court has stated that proceedings under URESA do not supercede the original order of support. ***Hailey v. Holden***, 457 So. 2d 947, 952 (Miss. 1984) (citing ***Howard v. Howard***, 191 So. 2d 528 (Miss. 1966)). "As a general rule, an order still subject to modification in the state that rendered it may be modified by another state. [Citations omitted.] ... Arrearages in child support payments, however, are not subject to modification." ***Hailey***, 457 So. 2d at 951.
>
> **As URESA is a remedy in the courts of sister states for the enforcement of support orders, the original order of support is not affected by the orders from another state under URESA.** *Id*. at 952.

***Department of Human Servs. ex rel. Adams v. Rains***, 626 So. 2d 136, 139 (Miss. 1993) (emphasis added). Therefore, under URESA, the North Carolina court could not modify the child support order entered by the chancery court.

¶12. Patrick contends that Pamela submitted to the jurisdiction of the North Carolina court when she signed before a notary public and evidently forwarded to the North Carolina court a statement indicating that she accepted a decrease in Patrick's child support obligation. However, as Pamela points out in her brief, § 93-11-57, part of the Mississippi codification of URESA, provided that "[p]articipation in any [URESA] proceedings . . . shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding." In other words, merely filing a URESA action in another state and participating in the URESA proceedings in the other state does not subject the Mississippi resident to the other state's jurisdiction.

¶13. Under the UIFSA, the issuing state of the child support order is the only state that can modify the order, so long as it retains "continuing, exclusive jurisdiction." Section 93-25-17 provides that a Mississippi court issuing a child support order has "continuing, exclusive jurisdiction":

> (a) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

> (b) Until all of the parties who are individuals have filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Because both Pamela and the minor child still reside in the State of Mississippi, and because Pamela never filed a written consent for North Carolina's assumption of jurisdiction with any court of this State, under the UIFSA, the orders entered by the North Carolina court are not enforceable.

¶14. Under both URESA and the UIFSA,[(3)] the North Carolina court did not have the power to modify the chancery court's order and Patrick's first assignment of error is without merit.

## II. WHETHER THE DEPARTMENT OF HUMAN SERVICES MAY RETROACTIVELY APPLY A CHANGE IN STATUTORY LAW AND INCREASE APPELLANT'S ARREARAGE IN THE AMOUNT OF APPROXIMATELY $6,000.00.

¶15. Patrick complains that, after Mississippi adopted the UIFSA, the MDHS erroneously applied the UIFSA retroactively by increasing the arrearage by approximately $6,000.00, but he does not cite a provision of the UIFSA that empowers a state agency to modify the amount of a child support arrearage. A review of URESA, the UIFSA and applicable case law convinces the Court that neither URESA nor the UIFSA affects substantive rights, but merely provides a **procedure** whereby child support orders may be enforced in foreign states. *See, e.g., Child Support Enforcement Div. of Alaska v. Brenckle*, 675 N.E.2d 390, 393 (Mass. 1997) ("It is also clear that UIFSA, like its predecessor URESA, does not create a duty of support, but rather provides the procedural framework for enforcing one State's support order in another jurisdiction."); *State Dep. of Human Servs. v. Jacoby*, 975 P.2d 939, 942 (Utah Ct. App. 1999) ("UIFSA merely provides a framework for enforcing one state's support order in another jurisdiction."). As the Massachusetts court held, URESA and the UIFSA do not, nor are they empowered to, create the duty to provide child support. *Brenckle*, 675 N.E.2d at 393.

¶16. This Court, in *Hailey v. Holden*, 457 So. 2d 947 (Miss. 1984), reiterated basic principles which apply to the enforcement of child support judgments and to the accrual of child support obligations:

> A child support judgment is awarded to the custodial parent for the benefit and protection of the child. *Miller v. Miller*, 29 Or. App. 723, 565 P. 2d 382, 100 A.L.R.3d 1120 (1977). There is a public policy consideration involved because of the interest of society to provide for its children's needs and to decrease society's financial burden when a child is supported through public assistance. The underlying principle here is the legal duty owed to the child for the child's maintenance and best interest. *McManus v. McManus*, 428 So. 2d 854 (La. Ct. App. 1983).

> We, therefore, conclude that since both the child's interest and society's interest are involved both interests are to be considered in resolution of any dispute involving child support. The child's maintenance and best interest are to be satisfied; on the other hand, the parties cannot undermine the state's interest. Of equal importance in this situation is the inherent power of the court to enforce its own orders and decrees.

> In Mississippi judicial interpretation of this legal duty to support minor children has firmly established that, once ordered, installment[s] of child support become fixed and vested when due and unpaid. *Cunliffe v. Swartzfager*, 437 So. 2d 43 (Miss. 1983); *Duncan v. Duncan*, 417 So. 2d 908 (Miss. 1982); *Hambrick v. Prestwood*, 382 So. 2d 474 (Miss. 1980); *Howard v. Howard*, 191

So. 2d 528 (Miss. 1966).

Additionally, a court cannot relieve the civil liability for support payments that have already accrued. *Cunliffe, supra; Duncan, supra; Howard, supra.*

*Hailey*, 457 So. 2d at 950-51.

¶17. Therefore, under Mississippi law, none of the interested entities or parties -- a Mississippi court, a North Carolina court, Patrick, Pamela, or the Mississippi Department of Human Services -- can alter the amount of arrearage that had accrued since the entry of the chancery court's judgment which ordered Patrick to pay $200 per month in child support. The fact that the MDHS mistakenly relied upon the North Carolina court's orders, miscalculated the amounts currently due by Patrick, and miscalculated the amount of the arrearage do not relieve Patrick of his liability for the accrued arrearage.

¶18. Because the UIFSA does not affect in any way the accrual of Patrick's arrearage, his assignment of error pertaining to the retroactive application of the UIFSA is without merit.

## CONCLUSION

¶19. The judgment of the Chancery Court of Lafayette County, Mississippi, is, therefore, affirmed.

¶20. **AFFIRMED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR.**

1. Pamela moved to Water Valley, Yalobusha County, Mississippi, in the mid-1990s.

2. In July of 1998, the MDHS (Dorris) calculated the arrearage as being $10,280.36.

3. Under the federal statutory scheme for enforcement of child support orders, the Full Faith and Credit for Child Support Order Act ("FFCCSOA"), the North Carolina court did not have the jurisdiction to modify the chancery court's order. Section 28 U.S.C. § 1738B (Supp. 1999) provides guidelines for determining, when dealing with multiple child support orders, which order will be recognized for purposes of continuing, exclusive jurisdiction:

> (3) If 2 or more courts have issued child support orders for the same obligor and child, and more than 1 of the courts would have continuing, exclusive jurisdiction under this section, an order issued by a court in the current home State of the child must be recognized, but if an order has not been issued in the current home State of the child, the order most recently issued must be recognized.

28 U.S.C. § 1738B(f). Because the minor child in the instant case resides in the State of Mississippi, the Mississippi chancery court's order would be recognized instead of the North Carolina court's orders. *See, e.g., Twaddell v. Anderson*, 523 S.E.2d 710 (N.C. 1999).